PATRICK G. MURRAY *v.* BENJAMIN G. CLARKE *and another.*

The plaintiff, who was a guest at the defendants' hotel, on the eve of his departure therefrom, surrendered his room, and at the same time requested the defendant's clerk to take charge of his valise during a short absence from the city, when he would return and pay his bill. The valise was taken charge of, and a brass return check was given therefor to the plaintiff. On the plaintiff's return, several days afterward, he registered his name, and was assigned a room, intending to remain some days. On calling for his valise, and presenting the return check, it was ascertained that the only valise in the baggage room, bearing the number of the plaintiff's check, was not the plaintiff's valise, which could not be found. *Held,* that whether regarded as an ordinary bailment, or as property in the defendants' hands, which they had a right to detain until the lien upon it was discharged, the defendants were bound to the exercise of ordinary care and diligence; and the burden was upon the defendants to show the circumstances of the loss. In default of any such affirmative proof by the defendants, the presumption will arise that the defendants were guilty of negligence.

APPEAL by the defendants from a judgment of the First District Court.

The facts are fully stated in the opinion of the court.

*Marsh, Coe & Wallis,* for appellants.

*Frederick Smyth,* for respondent.

BY THE COURT.—DALY, F. J.—The testimony in the case being conflicting, we must assume that the justice found the plaintiff's statement to be true in every particular in which it differed from that of the witnesses for the defendants. It appeared that the plaintiff came to New York on the 26th of July, 1865, and stopped at the Merchants' Hotel, kept by the defendants, and remained there as a guest for three or four days; that he was going to Jersey City to see a gentleman, and determined to give up his room at the hotel; that he went to the office of the hotel, where he saw the general clerk of the defendants, and gave up his room, telling the clerk that he was going away. He gave the clerk his valise. The clerk came

from behind the desk, and sent a porter with the valise, who brought back a brass check, which the clerk gave to the plaintiff at the office; upon which the plaintiff left, without paying his bill, intending, as he testified, to return.   Upon going to New Jersey, he found that the person whom he wished to see had gone to Buffalo, and, without returning again to the hotel, he went to Buffalo, and in about eight days thereafter he returned to the defendants' hotel, registered his name, a room was assigned to him, and he asked for his valise, delivering up his check.   A valise was brought to him, the brass check upon which corresponded with the one that had been given to him, but it was not his valise.   A search was made in the baggage room, but his valise could not be found.   The valise which had been produced as his was then opened, and it was found to contain a soldier's cap, a pair of pantaloons, and one or two other articles; while his contained a variety of articles, collectively valued at $125.

The plaintiff was himself a hotel keeper in the city of Washington, and as he left his valise with the intention of returning, without paying his bill, it may be a question, as the relation of innkeeper and guest existed when he left, whether it did not constructively continue during the period of his temporary absence (*Grinnell* v. *Cook*, 3 Hill, 490; *Robinson* v. *Walter*, 3 Bulst. 269; *York* v. *Greenaugh*, 2 Ld. Ray. 688; 1 Salk. 388; *Mason* v. *Thompson*, 9 Pick. 280; *Wintermute* v. *Clark*, 5 Sandf. S. C. 247; *Morris* v. *The Third Avenue Railroad Co.*, 1 Daly, 205).   But it is not necessary to pass upon that question.   The plaintiff, upon leaving for New Jersey, put his valise in charge of the general clerk of the defendants; and they had a lien upon it for the plaintiff's entertainment, as his bill had not been paid.   Whether regarded, therefore, as an ordinary bailment, or as property in the defendants' hands, which they had a right to detain until the lien upon it was discharged, the defendants were bound to the exercise of ordinary care and diligence.   If they could not produce it when required, it was for them to show how it had been lost; and if they could not explain the manner of its loss, the presumption would be that it was lost through their negligence, unless they

proved that they had exercised all the care and diligence that could be expected from them under the circumstances (*Arent* v. *Squire*, 1 Daly, 347). It was not, however, necessary in this case to rest upon any such presumption, for it was in evidence that the duplicate brass check was upon another valise than that of the plaintiff; and the justice was warranted in concluding, from this circumstance, either that the defendants' agent had checked this valise as the plaintiff's, by mistake, or that through the want of proper care and vigilance on the part of the defendants' agents, some other person had been able to transpose the checks in the baggage room; and that in this way, by the negligence of the defendants' agents, the plaintiff's valise had been delivered to another. It was for them to explain how this circumstance occurred; and if they could not, it was to be taken as affirmative proof of negligence on the part of their agent.

The judgment should be affirmed.