HARPER BOIES *vs.* THE HARTFORD & NEW HAVEN RAILROAD
COMPANY.

In the case of depositaries for hire where the goods are lost, the authorities are
not agreed as to whether the burden of proof of negligence is on the owner of
the goods or of reasonable care on the depositary. In England it is held that
the burden is upon the owner, but the courts in this country have in some
cases held otherwise.

The defendants, a railroad company, having transported for the plaintiff eigh-
teen bales of cotton, held the same at their warehouse to be called for by him,
but ultimately delivered to him but sixteen. The two other bales had been in
some manner lost. In assumpsit against the defendants as warehousemen for
the non-delivery of the two bales, the plaintiff having offered no proof of neg-
ligence except what was to be inferred from the receipt and non-delivery of the
bales, and the defendants not having explained how the bales had been lost or
in any manner accounted for them, nor shown that they had exercised reason-
able care to prevent their loss, the court ruled that the defendants, to deliver
themselves from responsibility for the goods, were bound to prove either a de-
livery to the plaintiff or that they had exercised ordinary care in keeping them,
and that under the circumstances the burden was not on the plaintiff to show
the manner of the defendants' negligence by means of which the loss occurred.
Held that this ruling, in the circumstances of the particular case, was correct.

ASSUMPSIT against the defendants, in one count as common
carriers and in another as warehousemen, for two bales of cot-
ton ; brought to the Superior Court in Middlesex County, and
tried on the general issue, with notice, closed to the court,
before *Phelps, J.* The following facts were found by the
court.

On the 7th day of January, 1869, the plaintiff purchased
in New York eighteen bales of cotton, which were forwarded
by steamer to New Haven, and thence by the defendants'
cars to Middletown. The whole number of bales were re-
ceived by the defendants on their arrival at Middletown, and
by them deposited in their buildings used as warehouses,
according to their custom, to be called for by the teamsters
of the plaintiff, who were to be sent from East Haddam for
them. Each bale was marked " H. Boies, Middletown," and
each had attached to it a tag similarly marked. Soon after
their arrival at Middletown the plaintiff paid the defendants
the freight upon the entire quantity.

The lot arrived in Middletown on or before the 9th of Jan-

uary, and was on that day all receipted for by one Carter, a driver for one Brooks, who was the teamster of the plaintiff, and who by himself and his drivers did all the hauling of the plaintiff's cotton from Middletown to East Haddam.

A regulation of the defendants then existing required of teamsters to receipt for an entire lot of goods before receiving any portion, and this receipt was required and given in pursuance of that regulation.    At the time the receipt was signed by Carter, the plaintiff's cotton was in a lot separated from other goods in the defendants' warehouse, and was pointed out to Carter and might easily have been counted by him, but in fact was not, and whether there were then less than eighteen bales in the lot did not appear.    A part of the lot was subsequently removed by the defendants, to make room for other goods, into their passenger depot.    Both buildings were kept locked at night, and the defendants also kept a watchman about their premises.

Brooks also carted cotton for other persons than the plaintiff, and his practice was to put on the same load from four to six bales belonging to two or more parties.    All the other manufacturers in East Haddam used a different and better grade of cotton than the plaintiff, and none of them received any part of what belonged to him.

In January and February, 1869, on account of the weak condition of the ice, the crossing of Connecticut river between Middletown and Portland was such that teams could not be loaded in Middletown and driven across, but the drivers were obliged to run the cotton over on hand sleds and otherwise in small quantities, and place it on their vehicles after it was so taken across, and sometimes bales belonging to different parties were for a week or two in considerable numbers left on the bank or at other places in Portland and by the roadside between there and East Haddam, but none of this lot of the plaintiff's cotton was so left.    Of the eighteen bales composing this lot, thirteen were taken across the river at Portland, three at Goodspeed's Landing, and the remaining two are missing.

During the winter season the defendants carry from New

Haven to Middletown large quantities of cotton for the different Eas' Haddam manufacturers, and on its arrival in Middletown store it in their freight house or other building until called for, without any charge for handling or storage. Some portions of it sometimes remain a month, as some of this lot did, and occasionally to the inconvenience of the defendants, and they have sometimes requested the teamsters, as they did with respect to a part of this lot, to hasten its removal.

The plaintiff first missed the two bales on the 6th or 8th of February, 1869, and immediately notified the defendants' employees in Middletown, and on the 23d day of February wrote their agent whose special duty it was to receive and attend to such notices.

There was no want of ordinary care on the part of the defendants or their servants proved by the plaintiff, except what is implied from the fact that they received eighteen bales of cotton belonging to the plaintiff, of which the plaintiff and his teamsters received but sixteen bales.

Upon these facts the court held—1. That the defendants were not liable as common carriers under the first count in the declaration, but were liable as warehousemen under the second count. 2. That inasmuch as the missing goods were in fact deposited by them in their warehouse, the defendants, to deliver themselves from responsibility for the goods, were bound to prove either a delivery to the plaintiff or his agent or servant, or that they had exercised ordinary care in keeping the goods after they received the same ; and that under the circumstances the burden was not on the plaintiff to show the manner and particulars of the defendants' negligence by means of which the loss occurred.

The court rendered judgment for the plaintiff upon the second count, and the defendants brought the record before this court by a motion in error.

*Tyler* and *Bacon,* for the plaintiffs in error.

1. The plaintiff ought not to have been allowed to recover against the defendants as warehousemen, because the facts, as found by the court, do not disclose any negligence on their

part in keeping the bales of cotton. On the contrary the court expressly finds that there was no want of ordinary care proved on the part of the defendants; that they kept their buildings locked and a watchman on guard at night. A warehouseman cannot be charged with the loss of goods committed to his custody, unless some negligence or want of ordinary care on his part is shown. 2 Redfield on Railways, (4th ed.) 60; *Garside* v. *Proprietors of Trent Navigation*, 4 T. R., 581; *Converse* v. *Norwich & N. York Transportation Co.*, 33 Conn., 166; *Thomas* v. *Boston & Providence R. R. Co.*, 10 Met., 472; *Lamb* v. *Western R. R. Co.*, 7 Allen, 98; Story on Bailments, § 444.

2. It is not necessary that the defendants should prove the manner in which the goods were lost, but only that they had been guilty of no negligence in keeping them. *Lichtenhein* v. *Boston & Providence R. R. Co.*, 11 Cush., 70.

3. The delivery of these eighteen bales of cotton to the plaintiff was complete, when Carter, the teamster of Brooks, signed the receipt for them. He was the authorized agent of the plaintiff for this purpose. The cotton was at that time delivered to him, and receipted for by him. The defendants, as the finding shows, kept the cotton to their great inconvenience, for a month or more, without any charge for handling or storage, and were accustomed so to do, and they therefore delivered the cotton as they had a right to do, to prevent any liability attaching to them as carriers or warehousemen for the future. They were discharged from all liability by this delivery. *Lewis* v. *Western R. R. Co.*, 11 Met., 509; *Parsons* v. *Hardy*, 14 Wend., 215.

4. The burden of proof is upon the plaintiff under such a declaration as that in the present case, to show that the defendants have been guilty of some want of ordinary care. His declaration alleges that the defendants " did not take due and proper care of, or safely or securely keep, the said goods for the plaintiff, but they, the defendants, so carelessly and negligently conducted themselves with respect to said goods and chattels, and took so little care thereof, that by the carelessness, negligence and improper conduct of the defend-

ants·and their servants, the said goods and chattels became and were wholly lost to the plaintiff." This is a material allegation of the declaration, the truth of which the plaintiff is obliged to prove, and he cannot throw upon the defendants the burden of proving this allegation untrue. *Lamb* v. *Western R. R. Co.*, 7 Allen, 98; *Cass* v. *Boston & Lowell R. R. Co.*, 14 Allen, 448; *Park* v. *O'Brien*, 23 Conn., 339.

*Chadwick*, for the defendant in error.

1. If this cotton was received at Middletown, and stored for delivery in the defendants' warehouse, they were there liable as keepers of goods for hire. *Norway Plains Co.* v. *Boston & Providence R. R. Co.*, 1 Gray, 263.

2. The burden of proof is on the defendants to show that they exercised due and reasonable care. *Brown* v. *Waterman*, 10 Cush., 117; *Alden* v. *Pearson*, 3 Gray, 342.

3. The defendants are bound to show generally in what manner the goods were lost; that is, to explain the loss, so that the court may see whether there was or was not due and reasonable care exercised. *Lichtenhein* v. *Boston & Providence R. R. Co.*, 11 Cush., 70.

PARK, J. The defendants complain of the following ruling of the court below, "that inasmuch as the missing goods were in fact deposited by them in their warehouse, the defendants, to deliver themselves from responsibility for the goods, were bound to prove either a delivery to the plaintiff or his agent or servant, or that they had exercised ordinary care in keeping them after they received them; and that under the circumstances the burden was not on the plaintiff to show the manner and particulars of the defendants' negligence by means of which the loss occurred."

The defendants concede their liability if they failed to exercise reasonable care over the property while it remained in their warehouse awaiting delivery to the plaintiff and the property was lost through the want of such care; but they complain of the rule that· governed the court in arriving at the conclusion that such care was not exercised.

We do not propose to lay down any general rule governing cases of this description, but confine ourselves particularly to the case we have in hand. The authorities are not uniform in respect to depositaries for hire where goods are lost, whether the *onus probandi* of negligence is on the plaintiff or of exculpation on the defendant. In England the burden is thrown upon the plaintiff, but in some of the American cases the defendant is required to exonerate himself from negligence. *Lichtenhein* v. *The Boston & Providence R. R. Co.*, 11 Cush., 70; *Brown* v. *Waterman*, 10 Cush., 117.

It appears by the record in this case that the plaintiff proved to the satisfaction of the court that the defendants received at their warehouse eighteen bales of cotton belonging to him and failed to deliver to him subsequently more than sixteen of the eighteen bales. The defendants did not show that the missing goods had been lost, neither did they give any explanation of what had become of them; nor that they exercised reasonable care to prevent their loss.

Under such circumstances we think the court did right in holding that "the burden was not on the plaintiff to show the manner and particulars of the defendants' negligence by means of which the loss occurred."

The court no doubt was satisfied from all the facts and circumstances of the case that it was difficult for the plaintiff to prove particular acts of negligence, but if the defendants exercised reasonable care over the property to prevent its loss, they could easily show the fact, and having failed to prove it the court regarded the circumstance as an implied admission that they did not exercise such care; which, considered in connection with the other facts of the case, satisfied the court that such care was not exercised.

We think the defendants were bound to account for the missing bales, or show themselves not chargeable with negligence, under the circumstances proved by the plaintiff; and having failed so to do, judgment very properly was rendered against them. *Lichtenhein* v. *Boston & Providence R. R. Co.*, and *Brown* v. *Waterman*, supra; 2 Kent's Com., (4th ed.) 587; *Logan* v. *Mathews*, 6 Penn. S. R., 417. The missing

goods were bulky, and could not have been removed without difficulty, and consequently not without the knowledge of the defendants. The very fact that they were missing, was strong evidence of negligence under the circumstances.

There is no error in the judgment complained of.

In this opinion the other judges concurred.